HERBERT L. DEAN ET AL. v. THE BOARD OF EDUCA-
TION OF THE CITY OF DETROIT.

*Contract for improving public building—Liability of board—
Subcontractors—Novation.*

The sole question in this case is whether the defendant is liable
to the plaintiffs as contractors for painting and glazing a
school building, their bid and accompanying bond having
been accepted, and the work done under said bid, which facts
are held to have originally constituted them contractors, and
that whether that relation was changed to that of subcontract-
ors was a question for the jury.

Error to Wayne. (Reilly, J.) Argued October 10,
1888. Decided January 11, 1889.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts
are stated in the opinion.

*James H. Pound,* for appellants.

*Henry A. Harmon,* for defendant.

[Briefs are confined to a discussion of the testimony.—
REPORTER.]

MORSE, J. The plaintiffs, who are copartners under
the name of H. L. Dean & Co., sue the defendant in
*assumpsit* for $442, which they claim to be the contract
price for painting and glazing the Twenty-ninth street
school, so called, in the city of Detroit. The defense is
that there was no contract between plaintiffs and defend-
ant; that plaintiffs did the work as subcontractors under
W. H. Morse & Co., who had the contract for doing the
carpenter work, painting, and iron work on the building
in question. Upon a trial of the issue in the Wayne cir-

cuit court, before a jury, Circuit Judge Cornelius J. Reilly directed a verdict for the defendant.

This ruling was erroneous. There was no dispute as to the performance of the work or the value of it. The undisputed facts are that on October 27, 1886, the plaintiffs were invited by the defendant to bid on this work by the following letter:

"OFFICE OF THE BOARD OF EDUCATION OF THE CITY OF DETROIT.

"DETROIT, MICH., Oct. 27, 1886.

"MESSRS. H. L. DEAN & CO.

"*Gents:* Proposals are invited for painting a school-house, plans and specifications of which can be seen at the office of the supervisor. Bids, together with bidding-bond, to be in the hands of the secretary not later than Thursday, November 4, at 5 o'clock P. M.

"Very respectfully,

"J. R. KING, Secretary."

November 4, 1886, plaintiffs put in their bid for the sum of $442. This bid was accepted by the board. It appears from the records of the defendant that at a regular meeting of the board, held December 9, 1886, the committee on real estate and school-buildings reported as follows:

"To THE BOARD OF EDUCATION.

"*Gentlemen:* Your committee beg leave to report that, per authority given them to proceed with the erection of the several schools, they have invited bids, and let the contracts, which have been awarded to the following parties:

TWENTY-NINTH STREET SCHOOL.

| | | |
|---|---:|---:|
| W. H. Morse, carpenter work | $4,097 00 | |
| H. L. Dean & Co., painting | 442 00 | |
| J. D. Candler & Co., galvanized iron and tin work | 560 64 | |
| J. A. Bolles & Co., iron work | 148 64 | |
| | | $5,247 64 |
| Jeyne & Sons, mason work | $3,600 00 | |
| William Green, plastering | 825 00 | |
| James C. Cobb, stone work | 527 00 | |
| | | $4,952 00 |
| Total | | $10,199 64" |

Also stating in such report how the bids ranged, and asking the concurrence of the board in the report. The report was concurred in and adopted.

The plaintiffs gave a bond for the performance of their bid and contract. This bond ran to the defendant. The making of this bid, the giving of the bond, and the acceptance of the bid and bond by the board of education, constituted a contract between the plaintiffs and the defendant. The work was done under the bid, and according to the plans and specifications named in the letter inviting the bid of plaintiffs. The defendant was liable for the contract price of such work, unless there has been a valid agreement between plaintiffs, defendant, and W. H. Morse & Co., that plaintiffs should look to Morse & Co. for their pay, and that they should pay them.

The defendant claims that attached to the plans and specifications, when plaintiffs examined them, before making their bid, was the following paragraph or statement:

"As the board proposes to know all the tradesmen concerned in this contract, the bids will be received in the following manner: Each citizen will tender bids to the board directly for his work, as described in the carpenter's specifications, and those chosen to do the work by the board will be incorporated in the carpenter's contract, and he alone held responsible to the board for the proper execution of the work."

But the plaintiffs claim that this is in different ink from the plans and specifications, and that they did not see it.

The secretary of the board telephoned to plaintiffs that the work was theirs; but when they went to see him, he told them that they should do the work for the board of education, but he should classify their bid with Morse & Co. Plaintiffs, not knowing Morse & Co., said they did

not like to do the work under them. The secretary said it was all right; that plaintiffs should get their pay; that Morse would have to bring the right bills into their office; so plaintiffs went on and did the work under Morse's instructions.

Plaintiffs charged the job on their books to the board of education, but when they went to see about the work they were told that Morse & Co. had the job for the carpenter work and for the whole job, and that they must draw their pay through Morse, but that the board would guarantee that they should be paid. They got an order from Morse & Co., and presented it to the secretary of the board, who said that was what he wanted, and he would see that the board paid it. It was also stated by the secretary that the board of education would see that all subcontractors were paid before they gave Morse & Co. the final estimates.

It also appears that plaintiffs went to Morse & Co. for money. Morse said he had no money, but he would give them some 30-day paper, which he would take care of.

Plaintiffs claimed that they never promised to look to Morse & Co. for their pay; that Morse & Co. never agreed to pay them; and that they did the work on the strength of the guaranty of the secretary that the board would pay them, and also relying upon their contract with defendant. They received from Morse & Co. on these notes $130 in cash, and held that firm's notes for the balance when this suit was tried. They made out a bill of the work as running against Morse & Co., and left it with the secretary of defendant. After Morse & Co. had failed to pay, they demanded pay of the defendant, and, on payment being refused, brought suit.

No evidence was given on the part of the defendant. The court below held that the plaintiffs' own evidence clearly disclosed the fact that there was no contract

between the board and plaintiffs; that they understood they were subcontractors under Morse & Co., and not original contractors; and therefore ruled they had established no cause of action.

We think plaintiffs had a right to go to the jury on their theory. As before said, they established a contract with the defendant to do this work independent of Morse & Co. If, as they claim, they never agreed to rely entirely on Morse & Co. for their pay, or did not so act as to release the defendant from its obligation to pay them for the work, they were entitled to recover in this suit the balance due them. The fact that they agreed to do the work under the instructions of Morse & Co., and to draw their pay through them, with the promise that the defendant guaranteed they should receive it, and that they presented Morse & Co.'s orders on the board, or took 30-day paper from Morse & Co. to get money, would have a bearing on the question of their accepting Morse & Co. as payees instead of defendant, but would not be conclusive unless the jury were satisfied that they meant to release the defendant from all obligation to pay, and to accept Morse & Co. in its stead.

Their contract was with defendant, and their bond was given to the board for the faithful performance of it. The work was done according to such contract; and, before defendant can be released from performance on its part, there must be shown some sort of a novation by which the plaintiffs accepted Morse & Co. as paymasters, and Morse & Co. agreed to pay in the place of the defendant.

The judgment is reversed, and a new trial granted, with costs to plaintiffs.

The other Justices concurred.